817 P.2d 170

**Colleen STEWART, Plaintiff–Appellant,**

v.

**Jeff RICE, Defendant–Respondent.**

**No. 18346.**

Supreme Court of Idaho,
Twin Falls, March 1991 Term.

Aug. 21, 1991.

was taken in a lawsuit involving a prior accident in which the injured party was involved. The trial court did not abuse its discretion in allowing the deposition to be read to the jury.

3. The trial court correctly excluded hearsay testimony of the injured party concerning why the injured party was unable to find employment as a ski instructor.

4. The trial court did not abuse its discretion in declining to award the injured party costs.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In March 1984, Colleen Stewart was teaching a ski class at Sun Valley when Jeff Rice collided with Stewart. Stewart sued Rice, alleging that Rice was skiing in a negligent manner and that the collision proximately caused Stewart to suffer a broken scapula and a series of epileptic seizures. Stewart claimed in excess of $500,000.00 in damages.

At trial, Rice introduced evidence that Stewart had been involved in a number of accidents prior to the 1984 ski accident. These accidents included a 1979 automobile accident, a 1982 ski accident, and an automobile accident in 1983. While Rice conceded that Stewart's broken scapula arose out of the 1984 ski accident, Rice contended that the prior accidents caused or contributed to Stewart's epileptic seizures.

One of Stewart's expert medical witnesses, Dr. Wilson, testified at trial that assuming Stewart did not lose consciousness following the 1983 automobile accident but did lose consciousness following the 1984 ski accident, it seemed more probable the seizures were a result of the 1984 accident. On cross-examination, counsel for Rice presented to Dr. Wilson a deposition of Stewart taken in the case involving the 1983 automobile accident. This deposition was taken several months after the 1984 ski accident. Wilson acknowledged that

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for plaintiff-appellant. Lloyd J. Webb, argued.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for defendant-respondent. John A. Doerr, argued.

JOHNSON, Justice.

This is a personal injury case. The predominant issue presented is whether the trial court adequately stated the grounds for the denial of a motion for new trial brought pursuant to I.R.C.P. 59(a)(5). We hold that in denying the motion for new trial the trial court did not adequately state the grounds for the denial of the motion because the trial court did not refer to I.R.C.P. 59(a)(5) or the standard applicable to the consideration of a motion under this rule and did not weigh the evidence to determine what amount the trial court would have awarded the injured party and compare that amount with the jury's award. Therefore, we remand the case to the trial court for a ruling on this aspect of the motion for new trial.

We also hold:

1. A new trial is not necessary merely because the jury did not award all of the special damages supported by the testimony of the doctors who treated the injured party, even though this testimony was not contradicted by other expert testimony.

2. The trial court correctly admitted the deposition of the injured party that

the deposition had been furnished to him as part of Stewart's records in preparation for an analysis of Stewart's medical condition. Rice's attorney offered the deposition in evidence, and it was admitted by the trial court as part of what Wilson said he had read. On cross-examination, Wilson acknowledged considering Stewart's statements in the deposition indicating that Stewart was knocked out in the 1983 automobile accident.

During the presentation of Rice's case, counsel for Rice requested that Stewart's deposition from the 1983 automobile accident case be read to the jury. Over the objection of Stewart's attorney, the trial court concluded that it was more appropriate to read the deposition to the jury than to allow the jury to consider the deposition as an exhibit.

Stewart presented evidence of more than $21,500.00 in medical expenses that were allegedly the result of the collision with Rice. Of these expenses, $14,315.12 represented services provided to Stewart by Dr. Hermann ($10,300.80) and by Dr. West ($4,014.32). Dr. Hermann testified that the amount of his bill represented the treatment that Stewart received from Hermann because of the 1984 ski accident. Dr. Hermann stated that epilepsy was among the things for which he treated Stewart. Dr. West acknowledged that some of the treatment Stewart received from him was because of the seizures.

The jury returned a special verdict finding that Rice contributed ninety percent to the cause of the accident and Stewart ten percent. The jury determined the total amount of damages sustained by Stewart as a result of the accident with Rice to be $4,504.25.

Stewart moved for a new trial pursuant to I.R.C.P. 59(a)(5) and (a)(6) or for a judgment n.o.v. pursuant to I.R.C.P. 50(b). In denying these motions, the trial court stated:

The court first finds that there was adequate evidence to support the jury's verdict. The court believes that the jury intended for the defendant to reimburse the plaintiff for the costs associated with her broken scapula. The other damages plaintiff alleged occurred, particularly the epileptic episodes, could well have been caused by the automobile accident. The plaintiff suffered or made allegations of similar natures and similar physical defects after the car accident. The court also feels that the jury could have found that certain medical expenses incurred by the plaintiff were unreasonable.

The trial court also ruled that there was "no overall prevailing party" and denied costs to either party.

Stewart appealed.

## II.

### THE TRIAL COURT CORRECTLY ADMITTED STEWART'S DEPOSITION FROM THE 1983 AUTOMOBILE ACCIDENT CASE.

Stewart asserts that the trial court should not have admitted her deposition taken in the case arising out of the 1983 automobile accident. We disagree.

Stewart argues that her deposition was not admissible under either I.R.C.P. 32(a)(4) or I.R.E. 804(b)(1). Rice counters that the deposition is admissible as an admission of a party opponent under I.R.E. 801(d)(2). We believe that both parties have ignored the basis for which the deposition was admitted as an exhibit—as one of the items considered by Dr. Wilson in preparing to give an opinion concerning the causation of Stewart's epileptic seizures.

I.R.E. 705 provides:

**Disclosure of facts or data underlying expert opinion.**—The expert may testify in terms of opinion or inference and give [the expert's] reasons therefor without prior disclosure of the underlying facts or data, provided that the court may require otherwise, and provided further that, if requested pursuant to the rules of discovery the underlying facts or data were disclosed. *The expert may in any event be required to disclose the*

*underlying facts or data on cross-examination.*

(Emphasis added.)

■ During the cross-examination of Dr. Wilson, counsel for Rice asked Wilson whether he had read Stewart's deposition in the 1983 automobile accident case in arriving at the conclusions to which he had testified. Wilson said he had. Wilson said he had reviewed the deposition as part of the records of Stewart in order to make an analysis of Stewart's medical condition. When Rice's attorney offered the deposition in evidence, Stewart's attorney objected for lack of foundation. The trial court admitted the deposition as part of what Wilson said he had read. It was clearly admissible under I.R.E. 705.

■ Later, Rice's attorney requested that the deposition be read into the record. The only objection interposed at that point by Stewart's counsel was that the deposition was already an exhibit and there was no reason to read it to the jury. Since it was already admitted, the reading of the deposition to the jury did not add any new evidence. Whether it would have been admissible otherwise as part of the defense is not at issue here. It is within the discretion of the trial court to determine when an exhibit is presented to the jury for its consideration. *Barton v. Dyer*, 38 Idaho 1, 5, 220 P. 488, 489 (1923). The reading of the deposition to the jury was nothing more than presenting it to them for their consideration. The trial court did not abuse its discretion in doing so.

### III.

THE TRIAL COURT CORRECTLY EXCLUDED STEWART'S HEARSAY TESTIMONY AS TO WHY STEWART COULD NOT FIND EMPLOYMENT AS A SKI INSTRUCTOR.

■ Stewart asserts that the trial court incorrectly prevented Stewart from testifying why she could not find employment as a ski instructor. We disagree.

During Stewart's testimony at trial, the trial court sustained objections to testimony by Stewart that was hearsay. Stewart attempted to testify what employees of Sun Valley told her were the reasons Sun Valley would not hire her back at the ski school and what her doctors said about not being a ski instructor. This testimony would clearly have been hearsay. Stewart was allowed to testify concerning her efforts to obtain employment.

### IV.

IN DENYING STEWART'S MOTION FOR NEW TRIAL THE TRIAL COURT DID NOT ADEQUATELY STATE GROUNDS FOR DENYING THE MOTION UNDER I.R.C.P. 59(a)(5).

Stewart asserts that in ruling on Stewart's motion for new trial pursuant to I.R.C.P. 59(a)(5), the trial court did not comply with the directions of this Court in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). We agree.

In *Quick v. Crane*, the Court stated that to allow the Court to determine whether a trial court abused its discretion in ruling on motions for judgment n.o.v. and for a new trial pursuant to I.R.C.P. 59(a)(5) and (a)(6), the trial court "must distinguish between the various motions and the grounds upon which they are based, and not ... simply lump them all together and issue a general grant or denial." *Id.* at 773, 727 P.2d at 1201. Describing what the trial court did in *Quick* and why it was inadequate, the Court said:

> In this case, when the judge denied the defendant's motion for a new trial and remittitur along with the motion for judgment n.o.v., he simply stated, "It is the court's feeling that there is ample evidence before this jury to justify these verdicts." Clearly, this does not reveal whether the trial judge appreciated the difference between a judgment n.o.v. and a new trial based on I.R.C.P. 59(a)(6), nor does it indicate whether he applied the correct standard for either. Furthermore, *since the trial court made no reference to either I.R.C.P. 59(a)(5) or the language contained in that rule, it is impossible for this Court to determine whether the trial court even ruled*

*on that part of the defendants' motion, let alone whether he applied the correct standard for that rule.*

*Id.* at 771, 727 P.2d at 1199 (emphasis added).

In this case, the trial court denied Stewart's motions for judgment n.o.v. and for new trial pursuant to I.R.C.P. 59(a)(5) and (a)(6) without revealing whether the trial court appreciated the difference in the standard to be applied in ruling on each of these motions. On appeal, Stewart raises only the issue of the trial court's denial of the motion for new trial pursuant to I.R.C.P. 59(a)(5).

I.R.C.P. 59(a)(5) provides:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

. . . .

5. Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.

In *Dinneen v. Finch,* 100 Idaho 620, 624–25, 603 P.2d 575, 579–80 (1979), the Court described in detail the process the trial court should follow in considering a motion pursuant to I.R.C.P. 59(a)(5):

In ruling on [an I.R.C.P. 59(a)(5)] motion, it is not required that the movant must be able to point to the record of proceedings and demonstrate some occurrence which created jury passion or prejudice. This is true whether the Rule 59(a)(5) motion for a new trial is by a defendant complaining of an excessive award or by a plaintiff complaining of an inadequate award. Trial courts, unlike jurors, have the advantage of having heard *and determined* many hundreds of damage claims. A trial court in a jury trial hears exactly the same evidence as the jury hears, and makes [its] own inward assessments of credibility and weight. So, when after a trial the jury returns a verdict which is thereafter assailed, either as excessive or as inadequate, the trial court's judgment is then called into play, requiring of [the judge] a *weighing* of the evidence. The sole

question on a Rule 59(a)(5) motion is the amount of the jury's damage award, as compared to the amount of damages the trial court on [its] view of the evidence would have awarded. Where the disparity is so great as to suggest, but not necessarily establish, that the award is what might be expected of a jury acting under the influence of passion or prejudice, the court will in the interests of justice grant a new trial or, alternatively, as a condition to denying the motion, order a remittitur, and if permissible by statutory or case law, an additur.

(Emphasis in original).

In *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1987) (*Sanchez I*), the Court found the findings of the trial court to be inadequate to sustain the granting of a remittitur or in the alternative a new trial and remanded for further findings. *Id.* at 616, 733 P.2d at 1241. On remand, the trial court made additional findings to support its ruling, and this Court upheld the decision. *Sanchez v. Galey,* 115 Idaho 1064, 1070, 772 P.2d 702, 708 (1989) (*Sanchez II*).

Recently, we applied *Dinneen* and *Quick* in remanding for more specific findings the ruling of a trial court granting a remittitur or in the alternative a new trial pursuant to I.R.C.P. 59(a)(5) or (a)(6). *O'Dell v. Basabe,* 119 Idaho 796, 809, 817, 810 P.2d 1082, 1095, 1104 (1991). In *Quick* we said:

We see no logic in requiring the trial court to explain a grant but not a denial of such motions, although the extent of [the trial court's] explanation will obviously be greater with a grant. In either case, [the trial court] must distinguish between the various motions and the grounds upon which they are based and not, as was the case here, simply lump them all together and issue a general grant or denial.

111 Idaho at 773, 727 P.2d at 1201.

■ Since the trial court did not refer to either I.R.C.P. 59(a)(5) or the language contained in the rule in its denial of Stewart's post-trial motions, it is impossible for this Court to determine whether the trial court even ruled on that part of Stewart's motions or applied the correct standard for

the rule. Also, the trial court's ruling does not reveal the weighing of evidence, the determination of what amount the trial court would have awarded Stewart, and the comparison of this amount with the jury's award. Therefore, we must remand to allow the trial court to rule on this portion of Stewart's motions according to the procedures specified in *Dinneen, Quick, Sanchez I, Sanchez II,* and *O'Dell.*

Although it is not cited by either party, we have reviewed *Black v. Reynolds,* 109 Idaho 277, 707 P.2d 388 (1985) in deciding this case. *Black* was decided after *Dinneen* and before *Quick.* In light of *Dinneen* and its progeny, we are unable to explain that portion of the Court's analysis in *Black* discussing the trial court's denial of the I.R.C.P. 59(a)(5) motion. *Id.* at 280–81, 707 P.2d at 391–92. Therefore, to the extent *Black* is not compatible with the standards reaffirmed here for the consideration of I.R.C.P. 59(a)(5) motions, we overrule *Black.*

### V.

THE FAILURE OF THE JURY TO AWARD ALL THE SPECIAL DAMAGES THAT WERE SUPPORTED BY STEWART'S EVIDENCE AND NOT REBUTTED BY ANY EXPERT TESTIMONY DOES NOT REQUIRE THE GRANTING OF A NEW TRIAL.

Stewart asserts that a new trial should be granted on the ground that the jury did not award at least the $14,315.12 in medical expenses for the services of Dr. Hermann and Dr. West because no other expert rebutted this proof. We disagree.

The premise of Stewart's position is that the jury should not have been allowed to disregard uncontradicted and credible testimony by Dr. Hermann and Dr. West that the charges for their services were solely attributed to Stewart's injuries in the 1984 ski accident. The testimony of Dr. Hermann and Dr. West, however, reveals that each of them treated Stewart for epileptic seizures as part of their medical services. Other evidence in the case could have caused the jury to conclude that the 1984 accident did not cause or contribute to the epileptic seizures.

One of the key issues in the case was whether the 1984 accident caused or contributed to the epileptic seizures. Dr. Wilson, a neurologist who testified on behalf of Stewart, gave his opinion on direct examination that if Stewart had not lost consciousness in the 1983 automobile accident but had lost consciousness in the 1984 ski accident, then the 1984 accident was the probable cause of the epileptic seizures. On cross-examination, Dr. Wilson admitted that if Stewart had lost consciousness in the 1983 automobile accident but had not lost consciousness in the 1984 ski accident, he would believe that the 1983 accident was the precipitating factor of the epileptic seizures. Upon further cross-examination, Dr. Wilson acknowledged that there was evidence in the material he had been given to review in preparation for his testimony that Stewart had lost consciousness in the 1983 accident, but not in the 1984 accident.

Among the instructions given to the jury was the following:

A person who has a condition, pain, or disability at the time of an injury is not entitled to recover damages therefor. However, he is entitled to recover damages for any aggravation of such preexisting condition, pain, or disability proximately resulting from the injury.

If you find that before this occurrence the plaintiff had a preexisting bodily condition which was causing pain or disability, and further find that because of this occurrence the condition or the pain or the disability was aggravated, then if your verdict is in favor of the plaintiff you should consider the aggravation of the condition or the pain or the disability proximately due to such aggravation, but you should not consider any condition, pain, or disability which may have existed prior to the occurrence, or from which the plaintiff may now be suffering which was not caused or contributed to by reason of this occurrence.

You are to apportion, if possible, between the condition, pain, or disability prior to this occurrence and the condi-

tion, pain, or disability caused by this occurrence and assess liability accordingly. If no apportionment can reasonably be made by you, then the defendant is liable for the entire damage.

We conclude from the evidence, including Dr. Wilson's cross-examination, and from this instruction, that the jury may well have apportioned the medical expenses in an attempt to compensate Stewart for medical services attributable to the injuries other than the epileptic seizures. The trial court itself concluded in denying Stewart's post-trial motions:

> The court believes that the jury intended for the defendant to reimburse the plaintiff for the costs associated with her broken scapula. The other damages plaintiff alleged occurred, particularly the epileptic episodes, could well have been caused by the automobile accident.

While we conclude that the failure of the jury to award Stewart the entire amount of the charges for the services of Dr. Hermann and Dr. West does not require the granting of a new trial, we do not intend to imply that the trial court is limited in considering what the trial court would have awarded Stewart pursuant to the weighing required when it considers Stewart's I.R.C.P. 59(a)(5) motion on remand. The trial court is free to make its own determination of the amount of damages it would have awarded Stewart.

## VI.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO AWARD COSTS TO STEWART.

■ Stewart asserts that the trial court should have ruled that she was the prevailing party and awarded her costs. We disagree.

In rejecting Stewart's claim for costs, the trial court said:

> In the instant case the defendant was found to be 90% at fault and to that extent you could say that the plaintiff was the prevailing party. However the plaintiff's claim was for the epileptic episodes. Upon this issue the defendant

obviously prevailed. In the court's opinion there was no overall prevailing party.

I.R.C.P. 54(d)(1)(B) provides:

> Prevailing Party. In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, whether there were multiple claims, multiple issues, counterclaims, third party claims, crossclaims, or other multiple or cross issues between the parties, and the extent to which each party prevailed upon each of such issue or claims. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

The complaint in this case alleged that Rice was negligent in colliding with Stewart and that as a proximate result of the negligence, Stewart was injured. The prayer requested "$500,000 general damages, or an amount to be proved at the time of trial" and special damages "in an amount to be proved at the time of trial." The jury found that Rice's negligence was ninety percent the cause of the accident and assessed Stewart's total damages at $4,504.25.

I.R.C.P. 54(d)(1)(B) specifically directs the trial court, in exercising its discretion, to consider the result in relation to the relief sought in determining who the prevailing party is. In *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1990), we set out the analysis which this Court will make in determining whether or not a trial court has abused its discretion:

> (1) [W]hether the trial court correctly perceived the issue as one of discretion;
> (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards ap-

plicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Applying this analysis, we conclude that the trial court did not abuse its discretion in ruling that there was no overall prevailing party, and that neither party should recover their costs.

### VII.

### CONCLUSION.

We affirm the trial court's evidentiary rulings that have been questioned on appeal and the trial court's ruling that there was no prevailing party. We remand the case to the trial court for a ruling on Stewart's motion for a new trial pursuant to I.R.C.P. 59(a)(5). Because of the mixed result on appeal, we award no costs or attorney fees on appeal.

BAKES, C.J., and BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

I concur fully with every aspect of the majority opinion except for its decision in Part IV to overrule *Black v. Reynolds*, 109 Idaho 277, 707 P.2d 388 (1985). The majority does not explain in any detail why it is necessary or appropriate to overrule *Black*; therefore, I am unconvinced that we need to reach out and strike down this case. Furthermore, as the majority notes, neither party cited to this case, making the case for overruling *Black* even less compelling.